UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HARPER, | ) | CASE NO. 1:16-cv-2972 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CITY OF CLEVELAND, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is defendants' renewed motion for attorneys' fees (Doc. No. 46 ["Mot."])[1]. Plaintiff filed his opposition (Doc. No. 48 ["Opp'n"]) and defendants filed their reply (Doc. No. 49 ["Reply"]). For the reasons set forth below, the motion is **granted in part**.

I.  BACKGROUND

On December 12, 2016, plaintiff Christopher Harper ("Harper" or "plaintiff"), an African-American and a former police officer for the City of Cleveland, Ohio, filed this lawsuit against defendants City of Cleveland, Ohio, Police Chief Calvin Williams, and Director of Public Safety Michael McGrath (collectively, the "City" or "defendants") alleging generally that he suffered employment discrimination due to his race and in retaliation for the exercise of his First Amendment rights.

---

[1] Defendants manually filed a video exhibit to their motion. (*See* Doc. No. 47.) The video was allegedly "taken by Sergeant Mangan of Mr. Harper sleeping in his patrol [car] outside the airport terminal." (Mot. at 489 n.3 [All page number references are to the page identification number generated by the Court's electronic docketing system.].) In his opposition brief, Harper asks that this video be stricken. (Opp'n at 529 n.8.) The Court has searched the record and finds no video evidence submitted in support of defendants' summary judgment motion, although affidavits submitted attest to the fact that Harper was, indeed, recorded while sleeping on the job. This belatedly submitted video, even assuming it contains what defendants claim, adds nothing to the attorney's fee analysis. The Court has not considered it, but will also not strike it from the record.

Although Harper's claims were not set forth in separate counts, this Court construed the complaint as raising three claims: "(1) race discrimination in employment and (2) denial of equal protection (disparate treatment), both brought under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Ohio Rev. Code § 4112.01, *et seq.*; and (3) First Amendment retaliation, brought under 42 U.S.C. § 1983." (Doc. No. 39, Memorandum Opinion ["Mem. Op."] at 439.)

On May 7, 2018, this Court dismissed the two individual defendants (sued only in their official capacities), granted summary judgment in favor of the City, and dismissed the action, concluding that Harper was unable "to establish a *prima facie* case under any of his legal theories, . . . [was unable] to show that the City's well-articulated and well-supported legitimate, nondiscriminatory reasons for its disciplinary actions were not mere pretext for discrimination and/or retaliation[,] [and failed] to show any causal connection between his 'advocacy' and the City's disciplinary actions." (*Id.* at 444, 446.)

The Sixth Circuit affirmed the judgment on appeal, without oral argument, concluding that Harper "fail[ed] to establish a prima facie case of discrimination" and, in any event, "his claim would fail at the subsequent stages of the burden-shifting framework . . . [because] [t]he defendants identif[ied] a legitimate, nondiscriminatory reason for the suspension and transfer—that Harper repeatedly neglected his duties as an employee and then lied to hide his misconduct." *Harper v. City of Cleveland*, No. 18-3491, 2019 WL 2574980, at *5 (6th Cir. June 24, 2019). As for Harper's First Amendment retaliation claim, the court of appeals assumed that he had sufficiently alleged certain adverse actions by the City, but concluded that he "ultimately failed to establish the causal-connection element of the prima facie case." *Id.* at *7.

## II. DEFENDANTS' RENEWED MOTION FOR ATTORNEYS' FEES

### A. Applicable Law

Generally, "in the absence of legislation providing otherwise, litigants must pay their own attorney's fees." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415, 98 S. Ct. 694, 54 L.

Ed. 2d 648 (1978). Of those statutes that make fee awards available, some permit an award to "the prevailing party," regardless of whether that is the plaintiff or the defendant, "and entrust[] the effectuation of the statutory policy to the discretion of the district courts." *Id.* (footnote omitted). Section 1988(b) of Title 42, United States Code, is one such statute. It provides, in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs . . . .

The Supreme Court has clarified that an award to a prevailing *defendant* "should be permitted 'not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." *Christiansburg*, 434 U.S. at 421 (quoting *Carrion v. Yeshiva Univ.*, 535 F.2d 722, 727 (2d Cir. 1976)); *Hughes v. Rowe*, 449 U.S. 5, 14–15, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (holding that the *Christiansburg* standards apply to awards under § 1988); *see also Wayne v. Vill. of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994) ("prevailing defendant should only recover upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith[]"). But the district court should not presume that "because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 422.

"An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). "Courts that have awarded fees to prevailing defendants have emphasized the lack of evidence of unconstitutional acts presented by the plaintiff." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 184 (6th Cir. 1985) (collecting cases). The Sixth Circuit, when analyzing whether a district court has abused its discretion by awarding attorney's fees and costs

3

to a prevailing defendant, considers the following factors: "(1) whether plaintiff presented sufficient evidence to establish a prima facie case; (2) whether defendant offered to settle the case; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Balmer v. HCA, Inc.*, 423 F.3d 606, 616 (6th Cir. 2005), *overruled on other grounds by Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011).[2] Notably, however, mere failure to establish a prima facie case, by itself, is not dispositive. *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 637 (6th Cir. 2009).

### B. Discussion

Defendants argue that this action clearly meets the standard articulated in *Christiansburg*.

> There can be no better example of a groundless and meritless case where a [p]laintiff filed and maintained a case through the eve of trial knowing he had no admissible evidence to support the claims against the adverse parties. Plaintiff chose not to engage in any meaningful discovery, took no depositions, offered no witnesses (except his own self-serving and conclusory statements) in support of his position, and engaged in almost no written discovery. This is not a situation where the [p]laintiff hoped to find evidence about the parties through discovery. Instead, this is a case where [p]laintiff chose to do essentially nothing in the hopes of throwing the case to a jury for verdict. In doing so, he maintained his groundless claims against these parties knowing full well there was no competent evidence to support those claims.

(Mot. at 496.)

Plaintiff makes no serious attempt to refute defendants' argument under *Christiansburg* that his claims were "unreasonable, frivolous, meritless or vexatious" from the start.[3] Instead,

---

[2] In *Fox*, the Supreme Court rejected *Balmer*'s holding that attorney's fees to a prevailing defendant are precluded unless *all* of plaintiff's claim are frivolous. The Supreme Court held that "the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed." *Fox*, 563 U.S. at 834.

[3] In fact, Harper's first argument is that defendants themselves, in their answer, never raised any defense suggesting that his allegations were frivolous, in bad faith, or vexatious. (Opp'n at 522.) That may be true from a literal standpoint—defendants did not raise any such defenses in so many words. But both this Court and the court of appeals found that Harper failed to establish a prima facie case on any of his legal theories, and several of the affirmative

4

repeating his same groundless and unsupported "factual" assertions that he was unfairly "targeted" as "the leader of the airport police[]"—already rejected both by this Court and on appeal because it is not supported by the record—Harper repeatedly argues that there was no bad faith on his part and, therefore, an award of fees would be inappropriate. (Opp'n at 518–19.)[4]

Harper also claims he "could not have been clairvoyant about the outcome[]" (*id.* at 525), and urges this Court, based on *Christiansburg*, to "'resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" (*Id.* (quoting *Christiansburg*, 434 U.S. at 421–22).)

It would not have required clairvoyance to predict the outcome of this case where a City police officer claimed race discrimination and retaliation after he quit his job because he was disciplined for having been discovered (and even recorded) repeatedly sleeping on the job—thereby seriously shirking his sensitive airport police duties—and then lying about it.

This is not a case where facts came to light only after discovery, rendering the action "not groundless when filed." *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (affirming an award of a portion of defendant's attorney's fees and costs where, although discovery belied claimant's assertion of an unlawful companywide policy, plaintiff continued to litigate). This Court must focus not so much on plaintiff's "*theory* of the case, but rather, [on] whether the *claim* was frivolous, unreasonable, or groundless[.]" *Id.* at 592 (emphases in original). Here, the claims

---

defenses raised by defendants directly attacked various prima facie elements of plaintiff's claims. (*See, e.g.,* Doc. No. 5, Answer, ¶¶ 105–107.)

[4] Defendants' motion mentions "bad faith" only in passing. (Mot. at 493.) Their argument focuses on the groundlessness, frivolousness, and meritlessness of Harper's claims. Since subjective bad faith on the part of plaintiff is not required for the Court to order attorney's fees for a prevailing defendant, *Hughes*, 449 U.S. at 14, the Court need not consider whether there was bad faith.

were frivolous based on plaintiff's own pre-suit knowledge of the facts as they aligned with the elements of the prima facie cases he would be required to prove.

To conclude that Harper's claims were *not* meritless or frivolous under those facts would require a legal conclusion that his constitutionally protected First Amendment activities (which occurred most recently, according to the Sixth Circuit, in February 2009[5]—more than six years before the City's disciplinary action) somehow permanently insulated Harper from legitimate, reasonable discipline for on-the-job infractions. This is not the law, even setting aside his failure to establish causation for the retaliation claim. *Thomas v. AT&T Servs., Inc.*, 933 F. Supp. 2d 954, 972 n.12 (N.D. Ohio 2013) ("In light of [plaintiff's failure at her job responsibilities] she cannot show that written warnings or poor performance reviews would not have taken place absent [her] protected activity."); *Brown v. Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir. 1977) (protected activity "creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice[]"); *see also Nieves v. Bartlett*, __ U.S. __, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (to prevail on a claim of First Amendment retaliation, the retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive[]").

Harper did not merely fail to establish the prima facie elements of his claims; he presented *no* evidence[6] that his disciplinary transfer was in any way related to his race or to his protected

---

[5] *Harper*, 2019 WL 2574980, at *6.

[6] In support of their motion for summary judgment, the defendants filed affidavits, including that of Fred Szabo ("Szabo"), Assistant Director of Cleveland Hopkins International Airport, where Harper had worked. The security section of the airport, including the Cleveland Police, reported to Szabo. (Doc. No. 24-2, Affidavit of Fred Szabo ["Szabo Aff."] ¶¶ 1–2.) Szabo attested that, in mid-2013, he was made aware of citizen complaints that Harper was sleeping in his parked vehicle on the roadway at the airport; Szabo turned the matter over to Police Internal Affairs for investigation. (*Id.* ¶ 8.) Subsequently, Szabo learned that Harper was abandoning his post for hours at a time, disappearing into a utility room; his check of security cameras and Harper's swipe card records confirmed each of his entries into the utility room. (*Id.* ¶ 9.) Szabo and Internal Affairs decided to install a pinhole camera in the utility room

activities, rather than a result of his own completely undenied serious misbehavior on the job. To the extent Harper even acknowledges his misbehavior, he repeatedly argues in his opposition brief that "his infractions were unrelated to his [First Amendment] constitutionally protected activity." (Opp'n at 525; *see also id.* at 527.) In other words, Harper knew from the beginning that the City had good cause for its disciplinary actions against him, and he believed this legitimate reason had nothing to do with his alleged First Amendment activity (despite his current effort to make that linkage). As a result, he can be expected to have known that the City would not (and could not) be found liable on any of his claims. Although he now argues that he had no bad faith in bringing his complaint (and includes a self-serving affidavit to that effect), as already noted, subjective bad faith is not required.

Harper ultimately chose to voluntarily resign his position—he was neither fired nor constructively forced into retirement. There is no way that Harper should have (or could have) believed he had a viable claim of race discrimination and/or First Amendment retaliation. Yet, Harper pursued those claims, even in the face of defendants' offers to settle both in the district

---

and the resulting video footaged showed Harper sleeping in the room and even setting an alarm on his phone to wake himself. (*Id.* ¶¶ 11–12.) As noted by the Sixth Circuit, Harper was sent a "charging letter [by defendant McGrath] that detailed numerous allegations of [his] sleeping on duty, being late for his shift, neglecting his duties, and improperly filling out forms." *Harper*, 2019 WL 2574980, at *2. At his disciplinary hearing, Harper "entered a 'no contest' plea to these charges[,] . . . received a 30-day suspension and was transferred from the Airport to Cleveland's Fourth District." *Id.* With his opposition brief, Harper attached his own affidavit wherein he never denied any of Szabo's sworn statements. Rather, he merely complained that the alleged "anonymous" complaint(s) by the citizen(s) "should have been barred by the collective bargaining agreement." (Doc. No. 27-1, Christopher Harper First Affidavit ["Harper Aff. 1"] ¶ 32.) He further claimed he only used the Flight Information Display System room to prepare reports and to change clothes during cold weather. (*Id.* ¶ 34.) He never addresses, much less denies, that he was *recorded* sleeping for hours in the utility room (or in his vehicle). In his opposition to the current motion, Harper notes that some time after August 2012, "the City of Cleveland investigated me and found I was sleeping on the job and other infractions in the course of my employment." (Doc. No. 48-1, Christopher Harper Second Affidavit ["Harper Aff. 2"] ¶ 15.) This is Harper's only acknowledgment of this truth (other than perhaps his "no contest" plea). He then attests: "While I *believe* that the motive of the City of Cleveland to investigate me arose out of my protected organizing activity, I cannot excuse my wrongdoing in what followed my advocacy . . . [but] I genuinely *felt* the treatment I received was harsher than the treatment white police officers received . . . ." (*Id.* ¶¶ 16, 18 (emphases added).) This belated, self-serving affidavit cannot cure or excuse the known deficiencies in Harper's original complaint, as described herein.

7

court and at mediation in the court of appeals.[7] Moreover, the claim was resolved against him on summary judgment and not following a trial, providing further (although not conclusive) support that the claims were groundless.

Arguing that an award of attorney's fees is "not supported by Sixth Circuit and Supreme Court authority" (Opp'n at 522), Harper cites cases from other circuits (and the Supreme Court) for the proposition that fee awards are meant to encourage injured individuals to seek judicial relief and that "'[f]ee awards [to prevailing plaintiffs] should be the rule rather than the exception.'" (*Id.* at 523 (quoting *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1251 (9th Cir. 1981) (alteration added by plaintiff)); *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968); *Riverside v. Rivera*, 477 U.S. 561, 578, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986).)[8] Even the *one* Sixth Circuit case that plaintiff cites involved an award of attorney's fees to a prevailing plaintiff. (*See* Opp'n at 524 (citing *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343 (6th Cir. 2000)).) Plaintiff's argument is unavailing and entirely inapplicable under the facts and procedural history of this case. Harper was not the "prevailing plaintiff" in the *slightest* respect.

Harper also points to *Luke v. City of Cleveland*, Case No. 1:02CV1225, 2006 WL 625827 (N.D. Ohio Mar. 8, 2006), and asserts that "Cleveland's request for attorney fees as defendants was denied for virtually the same reasons it advances in this case." (Opp'n at 524.) This is a complete misrepresentation, since another defendant, not the City, sought fees in that case. Even

---

[7] The Minutes of Proceedings for the August 29, 2017 status conference before this Court reflect the fact of unsuccessful settlement negotiations. Defendants state that they again offered to settle during mediation in the court of appeals. (Reply at 539.) There is nothing in the record to substantiate the latter assertion and, since it was made in the reply brief, plaintiff had no opportunity to deny it, if he had been inclined to do so. That said, the Court doubts plaintiff would have let such an assertion by defendants go unchallenged if it were inaccurate or untrue.

[8] Plaintiff seems to suggest that it is somehow inappropriate as a general policy to ever award fees to a prevailing defendant or that, at the very least, the Court should first require proof of incivility of some sort. (*See* Opp'n at 523–25.) Of course, this is not the law.

8

if the City had sought fees, *Luke* would be distinguishable since at least part of it was resolved after a jury trial, not at the summary judgment stage.

Finally, Harper's reliance on *Riddle v. Egensperger*, 266 F.3d 542 (6th Cir. 2001) is also unavailing. In *Riddle*, the district court granted summary judgment to the defendant on Riddle's federal civil rights claims. On appeal, the Sixth Circuit noted that there was "extensive discovery, including 39 depositions[,]" and "affirm[ed] precisely for the reasons stated in the district court's well reasoned and thoughtful opinion of February 27, 1998." *Riddle v. Egensperger*, No. 98-3321, 1999 WL 283870, at *1 (6th Cir. Apr. 27, 1999). On the subsequent appeal from the district court's grant of an award of attorney's fees in defendants' favor, the Sixth Circuit reversed, concluding that the district court "engaged in hindsight logic which the Supreme Court discourages." *Riddle*, 266 F.3d at 551. "Both the [d]istrict [j]udge and the [m]agistrate [j]udge referred to facts which came to light during the extensive discovery to support the orders granting summary judgment and the attorney fee awards." *Id.* "There is no finding by the lower court that *the filing of the [c]omplaint* was an egregious case of misconduct by [p]laintiffs." *Id.* at 553 (emphasis added).

The instant case is distinguishable from *Riddle*. Here, the legitimate, nondiscriminatory and nonretaliatory reason for plaintiff's discipline was clearly known prior to the commencement of this action—he was discovered repeatedly sleeping on the job. Harper's entire argument was that he was "targeted" for discipline due to his First Amendment activities six years earlier and that, after receiving citizen complaints about his sleeping on the job at the airport, the City set out to "catch" him in wrongdoing when it set up cameras to investigate the complaints, which confirmed the substance of the complaints. Harper *never* denied that he actually was repeatedly sleeping on the job; he merely complained that he was caught doing so and that other notably dissimilar nonblack officers were treated differently for notably dissimilar infractions. *See Harper*,

2019 WL 2574980, at *4–5. This conclusion requires none of the "hindsight" discouraged by the Supreme Court because all of the "decisive facts" were already known prior to the filing of Harper's complaint.

Finally, plaintiff also asserts that he "competently and responsibly complied with every aspect of the requirements under . . . the Court's Case Management Order, the rules of the United States District Court for the Northern District of Ohio and all procedures[.]" (Opp'n at 520–21 (itemizing examples of compliance).) He claims there "was nothing other than mutual discovery, mutual respect, mutual compliance and joint preparation for trial." (*Id*. at 526.) But clearly, one (or one's lawyer) can faithfully follow the relevant rules of procedure (and should do so, in any event) even while litigating an entirely groundless case. While plaintiff's argument might have applicability if either Fed. R. Civ. P. 11 or 28 U.S.C. § 1927 were the basis for defendants' motion, it has no bearing under the analysis for "prevailing party" fees under 42 U.S.C. § 1988.

Although the Court recognizes that an award of attorney's fees to prevailing defendants is reserved for "egregious" cases, in light of all the above, the Court determines this is such a case. Plaintiff Harper initiated his lawsuit knowing full well that he had been legitimately disciplined as a consequence of his own serious misconduct on the job. He knew from the start that he had no viable claims for race discrimination in the face of defendants' legitimate, nondiscriminatory and nonretaliatory reason for the discipline which, no matter what protected conduct he may have engaged in, would have led to the same result. Yet Harper proceeded. On these facts, defendants are entitled to recover attorney's fees expended with respect to Harper's "unreasonable, frivolous, meritless" claims.

## C. Award of Attorney's Fees[9]

There is a "strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).

Reasonable fees under § 1988 "are to be calculated according to the prevailing market rates in the relevant community[,]" *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record[.]" *Adcock-Ladd*, 227 F.3d at 350. In determining a reasonable hourly rate, a court may consider

> (1) affidavits of other attorneys or experts; (2) citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases; (3) references to fee award studies showing reasonable rates charged or awarded in the relevant community; (4) testimony of experts or of other attorneys in the relevant community; (5) discovery rates charged by the opposition party; and (6) reliance on the court's own expertise to recognize applicable prevailing rates.

*Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) (citation omitted).

A court should also require a showing that the hours spent were reasonable. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). "'Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'" *Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).

---

[9] Defendants are not seeking any other costs.

11

Once the lodestar is established, a district court, in consideration of other relevant factors, may adjust the fee award upward or downward to achieve a reasonable result. *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (citing *Hensley*, 461 U.S. at 434). "When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008). The Sixth Circuit has also "recognized that the right of a prevailing [party] to attorneys' fees under [fee-shifting] statutes . . . extends to fees incurred defending an appeal[.]" *West v. Hess Envtl. Servs., Inc.*, Nos. 95-5676, 95-5677, 95-5755, 1997 WL 189507, at *4 (6th Cir. Apr. 17, 1997); *see also Riley v. Kurtz*, 361 F.3d 906, 916 (6th Cir. 2004); *Harper v. BP Expl. & Oil, Inc.*, 3 F. App'x 204, 210 (6th Cir. 2001); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1404 (6th Cir. 1995).

In any event, "[t]he district court should 'provide a concise but clear explanation of its reasons' for its conclusions regarding an attorney fee award." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745–46 (6th Cir. 2005) (quoting *Paschal v. Flagstar Bank,* 297 F.3d 431, 433 (6th Cir. 2002) (citing *Hensley,* 461 U.S. at 437)). In a case like this, where attorney's fees are assessed against a plaintiff, the concern for reasonableness is heightened because of the potential chilling effect that courts are cautioned to avoid in the civil rights context. *Garner*, 554 F.3d at 642.

Defendants argue that they were required to defend against "a multitude of claims lodged against multiple defendants" making "multiple attorneys" reasonable. (Mot. at 497.) In light of "the breadth and depth of allegations" and "the need to prepare to defend allegations that go back dozens of years," the total time spent, they argue, is also reasonable. (*Id.*) Defendants further note

12

that plaintiff's own estimated fees at the outset of the case far exceed defendants' instant request. (*See* Doc. No. 11, plaintiff estimating $136,000.00 in total fees, including $96,000 in pretrial fees.)

Defendants have supplied itemized listings of the time spent in defending Harper's claims before this Court, as well as in responding to the appeal. (*See* Doc. Nos. 46-2 and 46-3.) They point out that they are not seeking payment for 54% of their itemized appeal entries, nor for any time expended by Attorneys Aikaterini Houston and Shawn Mallamad.

Defendants ask for an hourly rate of $300. They have submitted the affidavits of two experienced attorneys who practice in this venue. (*See* Doc. No. 46-4, Affidavit of Stephen W. Funk ["Funk Aff."]; Affidavit of Jon Dileno ["Dileno Aff."].) Each of these attorneys has examined the fee petition and attests that this hourly rate is appropriate, reasonable, and not in excess of the prevailing market rate for senior attorneys such as Ms. Pellom and Mr. Pike. (Funk. Aff. ¶ 4; Dileno Aff. ¶ 5.) Defendants also note that plaintiff's own attorney was granted fees at rates of close to $800/hour in a comparable case where the plaintiff prevailed. (Mot. at 498 n. 24 (citing *Barrow v. City of Cleveland*, No. 1:16CV923, Doc. No. 69).)[10]

In his opposition brief, Harper failed to address the specific fee request, much less articulate even the slightest challenge to the hours claimed or the rate sought. He also failed to take the opportunity to argue any inability on his part to pay any fees. *See, e.g.*, *Pierzynowski v. Police Dep't City of Detroit*, 947 F. Supp. 1147, 1150–51 (E.D. Mich. 1996) (citing cases where

---

[10] In *Barrow*, before the case was submitted to the jury, the district judge granted judgment as a matter of law as to punitive damages, all claims against the three (3) individual defendants, and the multiple claims of discrimination, leaving only the claim of retaliation against the City of Cleveland, on which the jury returned a verdict in Barrow's favor, awarding $55,900 in compensatory damages. The district judge subsequently adopted a magistrate judge's recommendation as to plaintiff's motion for fees and costs, awarding $107,569.53 in attorney's fees plus $4,266.15 in costs. *Barrow v. City of Cleveland*, No. 1:16CV923, 2018 WL 3105110 (N.D. Ohio June 25, 2018). This award was affirmed on appeal, with the Sixth Circuit holding that the district court did not abuse its discretion by not reducing the lodestar amount due to plaintiff's having prevailed on only one of his several claims since all of the claims were based on common facts. *Barrow v. City of Cleveland*, 773 F. App'x 254, 268 (6th Cir. 2019).

prevailing defendant fee awards were justified based on plaintiff's failure to respond). The Court construes this as an admission by Harper that, if defendants are entitled to fees (as they are), their request as presented is reasonable. Nonetheless, the Court has independently evaluated the overall reasonableness of defendants' request.

As indicated previously, defendants are not seeking all of their possible fees. They seek to recover as follows:

**For discovery, dispositive motion practice, and trial preparation:**
| | | |
|---|---|---|
| Attorney Stacey Pellom | 121.5 hours x $300/hour | $36,450.00 |
| Attorney Michael Pike | 38.6 hours x $300/hour | $11,580.00 |

**For Sixth Circuit Appeal:**
| | | |
|---|---|---|
| Attorney Michael Pike | 35.2 hours x $300/hour | $10,560.00 |
| | **Total Fees** | **$58,590.00** |

The Court finds the hourly rate of $300 reasonable.[11] As to the number of hours claimed, although defendants have already eliminated a significant portion of their hours, the Court concludes that some additional hours must be eliminated.

All of the hours claimed for trial preparation should not be charged to plaintiff. The summary judgment motions were originally due December 22, 2017, and scheduled to be fully briefed by February 2, 2018. The final pretrial conference was set for May 9, 2018, which allowed sufficient time—about three months—for the Court to issue a ruling on any motion(s). (*See* Doc.

---

[11] The Court notes that the attorneys on both sides of the case in *Barrow* were the same attorneys as in the instant case. The district judge in *Barrow* remarked that the billing rate for the City of Cleveland Law Department was $300 for the two more senior attorneys (Pellom and Pike). *Barrow*, 2018 WL 3105110, at *2. This Court presumes those rates have not changed since and, given no response from plaintiff with respect to the hourly rate, the Court has no reason to believe such rate is unreasonable, especially in view of the rate of almost $800 that was allowed in *Barrow*.

No. 12.) Both parties requested extensions in the briefing schedule, which resulted in the Court's inability to render a ruling before the various trial preparation deadlines.

That said, it is not a simple matter to review the entries for trial preparation because they merely summarize, but do not itemize, the tasks performed. In similar situations, other courts, including the Sixth Circuit, have used an across-the-board percentage reduction to account for vague and/or inadequate entries. *See e.g.*, *Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005) (approving of across-the-board approach to fee determination) (citation omitted); *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995) (across-the-board percentage cut is "a practical means of trimming the fat from a fee application" that contained "commingled and undifferentiated estimates of time") (quotation marks and citation omitted); *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 419 (6th Cir. 2004) (noting that while cutting a percentage of hours may appear "arbitrary," it is an "essentially fair approach"); *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 764 (N.D. Ohio 2010) (50% reduction for excessive billing and inadequate documentation); *Healthcall of Detroit, Inc. v. State Farm Mut. Auto. Ins. Co.*, 632 F. Supp. 2d 676, 685 (E.D. Mich. 2009) (40% reduction in fees to account for inadequate "summaries" of activities); *Tinch v. City of Dayton*, 199 F. Supp. 2d 758, 764-65 (S.D. Ohio 2002) (fee reduced by 30% to account for duplicative hours and vague and inconsistent entries). The Court concludes that an award of half the hours claimed by defendants for trial preparation is warranted and will result in a reasonable, yet not excessive, award.

Accordingly, the Court will award fees to the prevailing defendants as follows:

**For dispositive motion practice:**

| | | |
|---|---|---|
| Attorney Stacey Pellom | 71.0 hours x $300/hour (Ex. B at 502–503 -- 12/18/17 to 1/12/18 and 2/21/18 to 2/27/18) | $21,300.00 |
| Attorney Michael Pike | 4.1 hours x $300/hour (Ex. B at 505 -- 1/8/18 to 2/27/18) | $ 1,230.00 |

**For trial preparation:**

| | | |
|---|---|---|
| Attorney Stacey Pellom | 14 hours x $300/hour (Ex. B at 503–04 -- 4/17/18 to 5/7/18 [1/2 the hours]) | $ 4,200.00 |
| Attorney Michael Pike | 11.55 hours x $300/hour (Ex. B at 505–06 -- 4/16/18 to 5/7/18 [1/2 the hours]) | $ 3,465.00 |

**For briefing of the attorney's fee petition:**

| | | |
|---|---|---|
| Attorney Michael Pike | 10.3 hours x $300/hour (Ex. B at 506 -- 5/11/18 to 5/15/18) | $ 3,090.00 |

**For Sixth Circuit appeal and renewed fee motion:**

| | | |
|---|---|---|
| Attorney Michael Pike | 35.2 hours x $300/hour (As on Ex. C) | $10,560.00 |
| | **Total Fees** | **$43,845.00** |

## III. CONCLUSION

For the reasons set forth herein, defendants' renewed motion for attorneys' fees (Doc. No. 46) is granted in part. Attorneys' fees are awarded in favor of prevailing defendants and against plaintiff in the total amount of $43,845.00, as itemized above.

**IT IS SO ORDERED**.

Dated: January 10, 2020

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**